**UNITED STATES of America**

v.

**James Shelton DAVIS.**

**Crim. No. 66–68.**

United States District Court
D. Massachusetts.

Aug. 1, 1966.

As Amended Dec. 22, 1966.

Paul F. Markham, U. S. Atty., Edward J. Lee, Asst. U. S. Atty., for plaintiff.

Calvin Wier, Boston, Mass., for defendant.

## OPINION

WYZANSKI, Chief Judge.

This case comes before this Court on defendant's motion to suppress evidence, filed April 22, 1966, orally explained on May 2, and supplemented by a motion to amend filed May 6. Inasmuch as the

motion to amend merely records what counsel stated on May 2, the amendment is allowed. As amended, the motion seeks to suppress two statements made on March 5, 1965 by defendant aboard the S. S. PIONEER GLENN: the first to Walter J. Skerry, Customs Port Investigator, in which defendant admitted that certain marihuana cigarettes were his and that he had gotten them in Mexico in exchange for American cigarettes; the second to James R. Desmond (erroneously described in the motion to amend as Philip R. Bowen), Customs Agent, in which defendant admitted that he had not registered as a marihuana importer (see 26 U.S.C. § 4753,) or paid the tax (see 26 U.S.C. §§ 4751, 4755) on the marihuana he had brought into the United States.

March 4, 1965 Daniel T. Gustafson, a Customs Port Investigator, in charge of a boarding party, boarded at East Boston the S. S. PIONEER GLENN for the purpose of searching that vessel for contraband, that is goods which had not been covered by an importation invoice and on which an importation tax had not been paid. Officer Laffey, one of the boarding party, found in an overhead vent located in the crew deck area two envelopes containing marihuana and in a trash can marihuana cigarettes and loose marihuana.

The next day, March 5, 1965, the customs officials, now acting under the direction of Customs Investigator Walter J. Skerry, continued the search. About 10:45 A.M. Gustafson and at least one other customs official entered a cabin shared by two members of the crew, Davis and Lamb. Only Davis was there. The customs officials, having identified themselves, searched defendant's locker. Within five minutes after they had entered the cabin they found one marihuana cigarette in the pocket of a jacket which had been in the locker.

While the customs officers were searching his cabin, defendant asked leave to go to the bathroom. The customs officials searched him, and then allowed defendant to go to the bathroom, but only under escort by a customs officer.

Gustafson summoned Skerry about 11:00 A.M. Skerry then, in defendant's presence, searched the area around defendant's bunk. Skerry found over the bunk a package containing handmade marihuana cigarettes. Without warning defendant that his statements might be used against him, or advising him of any right defendant may have had to remain silent or to assistance of counsel, Skerry asked defendant where he had purchased these marihuana cigarettes. Defendant told him that he had purchased them in Mexico. Skerry asked how much he paid. Defendant said he exchanged American cigarettes for those cigarettes.

Defendant himself testified that after these responses (which were given before noon), he was informed by the customs officers that he was free to move about the ship or move generally.

At 3:50 P.M. March 5, Skerry, Gustafson, and Customs Agent Desmond, being aware that a chemist in the customs service had determined that the items found then and on the preceding day were marihuana, and, having procured a warrant for the arrest of defendant, went to his cabin. Desmond, having identified himself, asked Davis if he had registered and paid the tax on the marihuana. Davis said no. Then Desmond told Davis that Desmond was "placing him under arrest for violation of the narcotic laws of the United States, that he didn't have to say anything and anything he said may be used against him."

We consider first the admissibility of the statements Davis made to Skerry.

When interrogated by Skerry, Davis was not under arrest. Customs officials had him under detention, which did not last over an hour and a quarter, and involved no more than keeping Davis on his vessel until the officials could ask him questions about what their search had disclosed. The search was lawful.

19 U.S.C. §§ 482, 1581, and 1582. The detention was lawful both by statute, 19 U.S.C. § 1582, and by common law. United States v. Vita, 294 F.2d 524, 529–530 (2d Cir.); People v. Mickelson, 59 Cal.2d 448, 30 Cal.Rptr. 18, 380 P.2d 658. See Commonwealth v. Lehan, 347 Mass. 197, 202, 196 N.E.2d 840.

■ It cannot be said, to use the words of the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694, that Davis had been "deprived of his freedom of action" in a "significant way." Hence the statements of Davis to Skerry are not subject to exclusion on the ground that they were elicited during a custodial investigation of the type directly in issue in Miranda and companion cases.

There remains the issue as to whether the statements were subject to exclusion because they were elicited by questions, unaccompanied by cautionary warnings, put by a law enforcement officer who already had evidence which gave him reasonable cause to suspect Davis of a crime.

Before the decision in Miranda neither the Constitution, nor any rule of federal law, nor any common law principle required the exclusion of a person's response given to the question of a law enforcement officer who failed to give a cautionary warning after he had cause to suspect, or to arrest, or to focus attention on that person. Cf. Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090.

It is quite possible that the Supreme Court will carry the principles of Miranda beyond custodial interrogation. That Court may interpret the Constitution to exclude responses given to enforcement officers who fail to give cautionary warnings when questioning a person against whom evidence would afford reasonable cause for suspecting he has committed an offense. Or that Court may, pursuant to its control of federal criminal law, practice, procedure, and enforcement agencies exclude such responses. Or that Court may adopt some rule distinguishing between sustained and brief interrogations. But the Supreme Court has not taken any such steps. And it would be imprudent for a District Judge to go so far.

■ It follows from the foregoing discussion that Davis is not entitled to have his statements to Skerry suppressed.

■ Nor is Davis entitled to have suppressed the statements he made to Desmond. When Davis was questioned, he was not in custody. Nor did he even know that Desmond had a warrant for his arrest. Therefore, he was not under any different psychological pressure than any individual being asked questions by an enforcement officer. The only bases on which Davis urges that his statements to Desmond should be suppressed are that at that stage the enforcement officials not only had focussed their inquiry on him but were armed with a warrant to arrest him. But no decision of the Supreme Court of the United States or of the Court of Appeals of this Circuit known to me makes a statement inadmissible solely on those grounds.

Motion denied.