**UNITED STATES of America**

v.

**Walter P. MACKIEWICZ and Florence B. Mackiewicz.**

**Cr. No. 11970.**

United States District Court
D. Connecticut.

Aug. 23, 1967.

Samuel J. Heyman, Asst. U. S. Atty., New Haven, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the brief), for the United States.

Curtiss K. Thompson, of Thompson, Weir & Barclay, New Haven, Conn., for defendants.

TIMBERS, Chief Judge.

## QUESTION PRESENTED

Defendants, husband and wife, are charged in a four count indictment filed April 11, 1967, with income tax evasion in violation of 26 U.S.C. § 7201 by reason of alleged knowing understatement of income in their joint returns for each of the years 1960 through 1963. The central issue raised by defendants' motions to suppress evidence, pursuant to Rule 41 (e), Fed.R.Crim.P., is whether defendant Walter P. Mackiewicz freely and voluntarily cooperated with federal authorities in furnishing certain information as to the state of defendants' financial affairs while under investigation for the years in question by agents of the Internal Revenue Service.

The Court holds that the facts in this case reveal an entirely voluntary course of conduct on the part of defendant Walter P. Mackiewicz; accordingly, there can be no valid claim of violation of constitutional rights, and the instant motions are denied.

## FACTS

The following facts are not in dispute.

Defendants, residents of Bristol, Connecticut, filed joint income tax returns for the years 1960 through 1963.

In the fall of 1964, defendants' returns were under examination by Wilbur Gardner, an agent in the Audit Division of the Internal Revenue Service. Mr. Mackiewicz had engaged an accountant, Samuel Minella, and furnished relevant records to Minella for inspection by Gardner. Among such records were records previously kept separately by Mrs. Mackiewicz and delivered by her to her husband at his request; informed of the disposition of those records, Mrs. Mackiewicz never sought their return or attempted to limit their use.

As a result of his investigation, Gardner considered there to have been a significant understatement of income, and the matter was referred to the Intelligence Division of the Internal Revenue Service.

On January 12, 1965, Gardner and Maurice L. Harden, an agent of the Intelligence Division, proceeded to the Mackiewicz home to seek an interview. The two men found Mr. Mackiewicz at the building site of the couple's uncompleted new home; Harden identified himself and told Mr. Mackiewicz that he would like to ask him some questions. It was agreed that the agents would meet Mr. Mackiewicz later in the day at the Mackiewicz apartment over the family's grocery store in Bristol.

At the second meeting that day, Harden informed Mr. Mackiewicz that the purpose of the visit was to investigate defendants' failure to report all their income for the years 1961 through 1963. Harden then informed Mr. Mackiewicz that he was not required to respond to any questions or to furnish any records that he felt might be incriminating. Mr. Mackiewicz stated that he did not understand; Harden repeated his explanation,

and Mr. Mackiewicz then indicated that he did understand. No mention of a right to counsel was made, and Mr. Mackiewicz did not mention any desire to seek an attorney's advice.

Mr. Mackiewicz proceeded to make full and cooperative response to Harden's questions; he did not seek in any manner to delay or cut short the interview, and did not refuse to answer any question propounded. No threats or promises of any sort were made by Harden. Defendant was not under arrest, nor was his freedom of movement restricted in any fashion.

In the course of the interview, Mr. Mackiewicz was asked if his business books and records would be made available, and defendant replied that the books and records were at the agent's disposal, and could be obtained from Minella.

Harden also asked at that time to see the Mackiewicz safe deposit box, of which the husband and wife were joint lessees, and Mr. Mackiewicz freely consented. The two agents then accompanied Mr. Mackiewicz to his bank in Bristol, and the box's contents were inventoried.

The next day, January 13, 1965, Harden examined the books and records made available to him by Minella. At no time was any objection interposed by either Mr. or Mrs. Mackiewicz.

## CLAIMS OF THE PARTIES

Defendants contend that all evidence obtained by means of the interviews of January, 1965, should be suppressed for the reason that no intelligent and knowing waiver of basic Fourth, Fifth and Sixth Amendment rights was made by Mr. Mackiewicz; it is additionally contended that, with respect to Mrs. Mackiewicz, no such waiver of her rights could be made by her husband.

It is the government's contention, on the other hand, that the circumstances involved disclose a fully voluntary series of acts by Mr. Mackiewicz; as to the evidence pertaining to Mrs. Mackiewicz gathered thereby, it is contended that sufficient right of control over the critical effects was in the husband so that his consent was valid against the wife.

## OPINION

I. *Oral Statements by Defendant Walter P. Mackiewicz*

■ The Court can find no basis for suppression of statements made by Mr. Mackiewicz during the course of his interview with agent Harden on January 12, 1965, since that interview was accomplished through clearly voluntary cooperation on the part of defendant with full knowledge of his right to silence in the face of a criminal investigation.

■ A possible failure by agents of the Internal Revenue Service to employ the cautionary measures set forth in Miranda v. Arizona [1] is not relevant to disposition of the instant motions, since the procedural safeguards therein prescribed have application only to a suspect taken into custody "or otherwise deprived of his freedom of action in any significant way." [2] The critical factor of custodial interrogation is not present in this case, involving simply an interview with a person in his own home, and the Court is therefore not at liberty to require a demonstration that the rules laid down in Miranda have been observed. [3] Confronted with a wholly voluntary series of statements deliv-

---

1. 384 U.S. 436, 444–445, 479 (1966).

2. Miranda v. Arizona, supra note 1, at 444. This includes, of course, the incidence of the right to counsel. See Miranda v. Arizona, supra note 1, at 444; Escobedo v. Illinois, 378 U.S. 478, 490–491 (1964); see also Rickey v. United States, 360 F.2d 32, 33 (9 Cir. 1966), cert. denied, 385 U.S. 835 (1966); Kohatsu v. United States, 351 F.2d 898, 901–902

(9 Cir. 1965), cert. denied, 384 U.S. 1011 (1966).

3. See United States v. Bottone, 365 F.2d 389, 395 (2 Cir. 1966), cert. denied, 385 U.S. 974 (1966); see also United States ex rel. Molinas v. Mancusi, 370 F.2d 601, 603 (2 Cir. 1967), cert. denied, 386 U.S. 984 (1967); cf. Hoffa v. United States, 385 U.S. 293, 303–304 (1966); United States v. Knohl, 379 F.2d 427 (2 Cir. 1967).

ered in a context devoid of any indications of coercion, it is not appropriate for this Court to find applicable thereto as a pre-condition to admissibility adherence by government agents to a formal mode of procedure devised as a safeguard for situations in which compulsion is inherent.[4]

In short, given defendant's own decision to cooperate, there is no constitutional bar to the admission of his oral statements in evidence.[5]

## II. *Search and Seizure of Documents*

■ Defendants' financial records and safe deposit box were not examined pursuant to a search warrant. The government therefore has the burden of establishing voluntary consent, free from duress or coercion, an unequivocal, specific, and intelligently given consent.[6]

■■ While such consent is not to be lightly inferred,[7] it is clearly present in this case. The tax investigation did not involve the slightest trace of trickery or deception; in addition to the warning to both defendants considered inherent in the original commencement of the joint return audit[8], Mr. Mackiewicz was ex-

pressly advised of the purpose of the continued investigation, and was warned that he need not furnish any materials which he might feel were incriminating. Mr. Mackiewicz had a number of opportunities to raise objections or to withdraw his cooperation; he did neither. There is no evidence of persistent demands or other forms of coercion on the part of the agents, or of the least reluctance on the part of the defendant. In such circumstances, the Court must conclude that there was voluntary and effective consent.[9]

■ Furthermore, it is plain that the husband's consent validated the search and seizure of the records and effects of Mrs. Mackiewicz. Husband and wife were joint lessees of the safe deposit box; the other records of Mrs. Mackiewicz had been unreservedly delivered to her husband, and no subsequent objections or limiting instructions were given by her when she learned that the records were to be examined for purposes of the joint tax return audit. With joint and equal right of access to the safe deposit box, and unchallenged and unfettered posses-

---

4. It would seem especially imprudent for a District Court to initiate such an extension of the principles of Miranda, see United States v. Carlson, 260 F. Supp. 423, 427 (E.D.N.Y.1966), United States v. Davis, 259 F.Supp. 496, 498 (D.Mass.1966), since suppression of evidence pursuant to Rule 41(e) on such novel grounds would not be appealable. See DiBella v. United States, 369 U.S. 121 (1962); Carroll v. United States, 354 U.S. 394 (1957). But compare United States v. Turzynski, 67–2 U.S.T.C. ¶ 9489 (N.D.Ill.1967).

5. In view of possible conflict between an assertion of the marital privilege, see Hawkins v. United States, 358 U.S. 74, 75–79 (1958), and an ultimate finding of agency as between husband and wife, see 8 Wigmore, Evidence § 2232(1) (McNaughton rev. 1961), the precise scope of such statements' admissibility is best left for determination at the trial.

6. See United States v. Thompson, 356 F. 2d 216, 220 (2 Cir.1965), cert. denied, 384 U.S. 964 (1966); United States v. Smith, 308 F.2d 657, 663 (2 Cir. 1962), cert. denied, 372 U.S. 906 (1963).

7. United States v. Viale, 312 F.2d 595, 601 (2 Cir. 1963), cert. denied, 373 U.S. 903 (1963).

8. See United States v. Sclafani, 265 F.2d 408, 414–415 (2 Cir. 1959), cert. denied, 360 U.S. 918 (1959).

9. See, e. g., United States v. Thompson, supra note 6, at 220. It should be noted that Mr. Mackiewicz was better informed of his rights than most taxpayers deemed to have acted voluntarily in delivering their records for tax investigation. See, e. g., Greene v. United States, 296 F.2d 841, 842–843 (2 Cir. 1961), vacated and remanded with instructions to dismiss the appeal, 369 U.S. 403 (1962) (disposition of motion to suppress held non-appealable in DiBella v. United States, supra note 4); Grant v. United States, 291 F. 2d 227, 228–229 (2 Cir. 1961), vacated and remanded with instructions to dismiss the appeal, 369 U.S. 401 (1962) (same reason); United States v. Sclafani, supra note 8, at 414–415; see also Kohatsu v. United States, supra note 2, at 902; United States v. Spomar, 339 F.2d 941, 942–943 (7 Cir. 1965), cert. denied, 380 U.S. 975 (1965).

sion of and control over the couple's records, Mr. Mackiewicz had full authority to consent to the searches and seizures carried out by the agents.[10] Such consent was granted voluntarily, and the fruits of the consequent searches may not be suppressed.

## CONCLUSION

The undisputed factual record in this case having disclosed no violation of defendants' constitutional rights, defendants' motions to suppress evidence, pursuant to Rule 41(e), Fed.R.Crim.P., are denied.

**10.** See, e. g., Drummond v. United States, 350 F.2d 983, 989 (8 Cir. 1965), cert. denied, 384 U.S. 944 (1966); Nelson v. California, 346 F.2d 73, 77 (9 Cir. 1965), cert. denied, 382 U.S. 964 (1965); Burge v. United States, 342 F.2d 408, 413–414 (9 Cir. 1965), cert. denied, 382 U.S. 829 (1965); Sartain v. United States, 303 F.2d 859, 862–863 (9 Cir. 1962), cert. denied, 371 U.S. 894 (1962); United States v. Eldridge, 302 F.2d 463, 465–466 (4 Cir. 1962); United States v. Sferas, 210 F.2d 69, 74–75 (7 Cir. 1954), cert. denied, 347 U.S. 935 (1954); see also Roberts v. United States, 332 F.2d 892, 896–897 (8 Cir. 1964), cert. denied, 380 U.S. 980 (1965); Woodard v. United States, 254 F.2d 312, 313 (D.C.Cir. 1958), cert. denied, 357 U.S. 930 (1958); cf. United States v. Walker, 190 F.2d 481, 483 (2 Cir. 1951), cert. denied, 342 U.S. 868 (1951); United States v. Pugliese, 153 F.2d 497, 499 (2 Cir. 1945) (dictum).