Jasen, J.
Three New York City Narcotics Bureau detectives and a Federal narcotics agent, after exhibiting a search warrant to defendant, entered his apartment. A search of the apartment was conducted in the presence of defendant, his wife, and his brother-in-law, Anatola. Three glassine envelopes containing heroin and a manila envelope containing cocaine were discovered taped to the bottom of a portable clothes closet in a bedroom. *4 When asked by a detective, ‘ ‘ Does your wife know anything about this ? ’ ’, defendant admitted ownership and described the contents of the envelopes.
Defendant’s motion to suppress the narcotics found in his apartment was denied after a hearing. He was convicted after trial by jury of possession of narcotics as a misdemeanor (Public Health Law, § 3305) and sentenced to an indefinite term in the New York Penitentiary. The Appellate Division unanimously affirmed.
■ Defendant challenges on this appeal the sufficiency of the search warrant used to search his apartment, the refusal of the People to disclose the identity of an informer who supplied information upon which the search warrant was in part based, and the admissibility of his admission of ownership of the narcotics.
The search warrant in question was issued upon the affidavit of Detective Hurley of the New York City Police Department. Defendant contends that this affidavit is insufficient on its face to support issuance of the warrant.
In our judgment the allegations in the affidavit were sufficient to establish probable cause for the issuance of the warrant. The affidavit recounts that a reliable informer told affiant that he (the informant) had purchased heroin from defendant “ of 1085 Anderson Avenue, Apartment #3D Bronx, New York ” on several occasions, and that a large quantity of heroin would be delivered to defendant’s apartment on November 4— the day the affidavit was executed and the search warrant issued. It further relates that the informer is reliable and previously supplied information leading to the arrest and conviction of two named individuals for narcotics violations. Finally, the affidavit states that defendant was known to the police as a drug seller and that1 ‘ persons known to this officer as drug sellers were observed entering and leaving said premises ” on November 2, 1965 between 8:00 p.m. and 9:30 p.m. and on November 3,1965 between 9:00 p.m. and 11:00 p.m. We note that the words, “ said premises ”, as used in this affidavit, clearly refer to defendant’s apartment which is specifically described in the first paragraph of the affidavit and not to the ¡entire apartment building of which the apartment is a palrt. (People v. Metze, 21 N Y 2d 806.)
*5 The hearing Judge determined that the search warrant was properly obtained upon reliable information and was regular on its face. The Judge accordingly refused to suppress the contraband discovered during the course of the search.
In order to procure a search warrant based upon information supplied to the affiant by an undisclosed informer, rather than upon the affiant’s personal observations, the issuing Magistrate must be informed of “ some of the underlying circumstances from which the informant concluded that narcotics were where he claimed they were ” (Aguilar v. Texas, 378 U. S. 108, 114; see, also, People v. Montague, 19 N Y 2d 121, 122, cert. den. 389 U. S. 862; People v. Rogers, 15 N Y 2d 422) and that the informer is credible or his information is reliable. (People v. Montague, supra, pp. 122-123.)
The informant’s reliability was established in the instant case by the fact that he was known to the affiant and had previously furnished information which led to the conviction of two named individuals for narcotics violations. The affiant’s independent observations of defendant’s apartment not only verified the reliability of the informant’s information, but also provided additional grounds for issuance-of the warrant. (Spinelli v. United States, 393 U. S. 410.) Moreover, the affidavit also advised the Magistrate of the underlying circumstances from which the informer concluded that narcotics were being sold in defendant’s apartment—that he had purchased narcotics from defendant. Further, the Magistrate questioned Detective Hurley concerning the source and reliability of the matters contained in his affidavit before signing the search warrant. The independent observations of the affiant when taken together with the information which he averred he received from a reliable informant constituted a ‘ ‘ substantial basis ” for the Magistrate to conclude that narcotics were probably located in defendant’s apartment. (Spinelli v. United, States, supra; People v. Montague, supra, p. 125; People v. Rogers, supra; People v. Metze, supra; Jones v. United States, 362 U. S. 257, 271.) The search warrant was, therefore, issued upon the requisite reasonable or probable cause.
The conclusion that the search warrant was issued upon probable cause, however, is not dispositive of defendant’s further *6 contention that he was denied a fair trial by the refusal of the People to disclose the identity of the confidential informer at the suppression hearing.
The need to protect the government’s privilege of nondisclosure of the identity of informants to encourage citizens to communicate their knowledge of crime to law enforcement officials is self-evident and has recently been reaffirmed by the Supreme Court. (McCray v. Illinois, 386 U. S. 300; Lewis v. United States, 385 U. S. 206, 210; Hoff a v. United States, 385 U. S. 293; cf. People v. Malinsky, 15 N Y 2d 86, 92; cf. United States v. Tucker, 380 F. 2d 206, 213 [2d Cir., 1967]; cf. 8 Wigmore, Evidence [McNaughton Rev., 1961], § 2374 cf. Gutterman, The Informer Privilege, 58 J. Crim. L., C. & P. S. 32 [1967].) As recently observed by a Federal Court of Appeals, “ [t]he fear that harm may result from disclosure seems all the more real when it is recognized that the narcotics traffic is usually carried on by large organized rings which are ruthless in the protection of their interests and who deal mercilessly with those who disclose their activity.” (United States v. Tucker, supra, p. 213.) Recently the President’s Commission on Law Enforcement and Administration of Justice expressly acknowledged the necessity for informants in narcotics investigations because detection through other means proves so difficult — there are seldom aggrieved victims who will render information voluntarily (The Challenge of Crime in a Free Society, A Report by the President’s Commission on Law Enforcement and Administration of Justice, p. 218 [1967]; see, e.g., 1956 Report of Subcommittee on Narcotics of Committee of Ways and Means of House of Representatives, 1956 U. S. Code & Admin. News, Yol. 2, pp. 3274, 3302; Model Penal Code [Tent. Draft No. 9, 1959], § 2.10. comment 2, p. 16).
However, the public interest in effective law enforcement must be balanced against defendant’s interest in disclosure so that he may explore the justification foir the search warrant. This court struck the balance between these competing interests in People v. Malinsky (15 N Y 2d 86, supra). The government’s privilege of nondisclosure of the identity of informants is limited by. the ‘ ‘ fundamental requirements of fairness ’ ’ and must give way where ‘ ‘ its assertion would seriously prejudice the defense *7 ‘ by making a fair hearing impossible ’ ’ (People v. Malinsky, supra, p. 92.)
The instant case, however, is not one of those “ rare ” cases contemplated by our decision iii Malinsky “ where disclosure is demanded by the requirements of a fair trial ”, (People v. Malinsky, supra, p. 94.) Here, as in People v. Coffey (12 N Y 2d 443, cert. den. 376 U. S. 916), cited with approval in Malinsky, ‘ ‘ a showing of probable cause did not depend solely upon the officer’s testimony of the communications from the avowed informer.” (People v. Malinsky, supra, p. 94.) The informer’s information that defendant was selling narcotics was independently verified and corroborated by the observations of the detectives and Federal Agent Wysor during their stake-out of defendant’s apartment and building. The informant’s communication, therefore, was not essential to the establishment of probable cause for issuance of the search warrant in this case.
We note that the statements contained in the affidavit in support of the search warrant, summarized above, were amplified by the testimony of Detective Hurley at the suppression hearing and trial. Detective Hurley testified that on November 2, he and Detective Meehan observed defendant’s brother-in-law, Anatola, a known drug user and seller, enter defendant’s apartment and remain for 10 minutes.[1] The next day, accompanied by Federal Narcotics Agent Wysoir, Detective Hurley was standing across the street from the apartment building in which defendant lived when he observed one Bevins, known as a drug seller, whistle up to defendant who was standing at a window. Defendant motioned with his hand and Bevins entered the building and remained for 10 to 15 minutes. We also note that defendant was allowed to cross-examine Detective Hurley concerning the time and place of his meetings with the informer, how the informant was contacted, and the information disclosed at their meetings. Moreover, unlike Malinsky, the reliability of the informant was clearly established in the instant case. Under these circumstances, denial of disclosure of the informant’s identity did not deprive defendant of a fair trial. (People v. White, 16 N Y 2d 270, cert. den. 386 U. S. 1008; People v. Coffey, supra; cf. People v. Tucker, supra.)
*8 Defendant also argues that his admission of ownership of the narcotics discovered in the bedroom of his apartment was obtained during “ custodial interrogation ” and that the monitions established by Miranda v. Arizona (384 U. S. 436) were, therefore, required. It is not disputed that the warnings were not given. The suppression hearing in this case was conducted subsequent to the Miranda decision and its rules are, therefore, applicable (Johnson v. New Jersey, 384 U. S. 719, 732-733; People v. McQueen, 18 N Y 2d 337.) The hearing Judge found that defendant was not subjected to “ custodial interrogation ” and accordingly refused to suppress his admissions.
The fourfold Miranda warnings are applicable only in instances of “ custodial interrogation ” which the Supreme Court has defined as “ questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” (Miranda v. Arizona, supra, p. 444.) In a footnote appended to this sentence the court stated “ [t]his is what we meant in Escobedo [378 U. S. 478] when we spoke of an investigation which focused on an accused.” In People v. Rodney P. (Anonymous) (21 NY 2d 1,11), this court applied Miranda as requiring that the warnings be given “ when the questioning takes place under circumstances which are likely to affect substantially the individual’s ‘ will to resist and compel him to speak when he would not otherwise do so freely. ’ ”
Although the police officers were present in defendant’s apartment pursuant to a lawfully issued search warrant, they did not arrest him or subject him to any restraint or period of questioning up to the time his admission was made. The credible testimony establishes that defendant was not under any restraint or restriction during the course of the search but, rather, moved freely about the apartment observing the officers’ activities. Defendant’s wife, mother-in-law, and brother-in-law were also present in the apartment while the search was conducted. The record, therefore, supports the findings of the suppressionhearing Judge that defendant was not in a police-dominated atmosphere or inherently coercive setting which would affect substantially his will to resist or compel him to speak but, rather, ‘ ‘ was in the familiar atmosphere of his home under circumstances indicating his freedom from any compelling influences.” (People *9 v. Allen, 28 A D 2d 724; Allen v. United States, 390 F. 2d 476, 478-479 [D. C. Cir., 1968]; Evans v. United States, 377 F. 2d 535 [5th Cir,, 1967]; cf. People v. Rodney P. [Anonymous], supra; cf. People v. Phinney, 22 N Y 2d 288; cf. United States v. Davis, 259 F. Supp. 496, 497-498 [D. C., Mass., 1966]; cf. Commonwealth v. O’Toole, 351 Mass. 627 [1967].)
■ Further, defendant’s admission was made immediately upon discovery of the narcotics in response to an informal inquiry which recognized the possibility of his noninvolvement despite the location of the drugs in his apartment and sought to ascertain which of .the several other persons having access to the apartment was involved.[2] The most likely possibility at the time this question was asked was that the drugs belonged to defendant’s brother-in-law, Anatola, who had been apprehended while attempting to leave the apartment with a bag of narcotics and was in custody in another room. In fact, at both the suppression hearing and trial Anatola testified that he lived in defendant’s apartment and that the narcotics found beneath the ‘ ‘ portable clothes closet ’ ’ belonged to him. Clearly, therefore, the admis *10 sion was not the product of a process of interrogation designed to elicit incriminating statements from defendant. (People v. R. N., 23 N Y 2d 963; cf. People v. Wright, 66 Cal. Rptr. 95 [1968].) Undeir these circumstances the Miranda warnings were not required. (People v. Allen, supra; Allen v. United States, supra; Evans v. United States, supra; United States v. Davis, supra; People v. R. N., supra; cf. People v. Rodney P. [Anonymous], supra; cf. People v. Phinney, supra; cf. People v. Wright,supra; cf. Commonwealth v. O’Toole, supra; cf. United States v. Thomas, 396 F. 2d 310, 314 [2d Cir., 1968].)
Defendant finally contends that the trial court erroneously failed to instruct the jury on the voluntariness of his admissions. However, this alleged omission is nonreviewable since defendant did not request the court to charge on this point and did not except to the charge as given. (Code Crim. Pro., § 420-a; People v. Simons, 22 N Y 2d 533; People v. Feld, 305 N. Y. 322.) We note that, as discussed above, the admissions were properly determined to be voluntary at the pretrial suppression hearing, and that .this alleged error could have easily been corrected at trial had defendant made appropriate objection.
Defendant’s other arguments have been considered and are without merit.
Accordingly, the judgment of conviction should be affirmed.

. It is not clear from the record whether the .detectives were aware at this time that Anatola lived with defendant in his apartment.

. Defendant concedes that the statement he made when. shown the search warrant, that there were no drugs in his apartment, is admissible as a spontaneous and voluntary statement (People v. Torres, 21 N Y 2d 49, 53-54). Concerning the circumstances .existing at the time defendant made his admission, the hearing Judge made .the following findings of fact which we find to be supported iby the record.
“While Detective Hurley searched the bedroom- the .defendant stood nearby watching. In the course of such examination Hurley noticed a white cloth hanging from the bottom of a portable clothes closet therein and he asked the defendant, ‘What is under there?’ The defendant responded, ‘ I don’t know. Nothing.’
“ The detective thereupon removed such cloth finding therein five envelopes, four of which contained narcotics and one containing a non-narcotic white powder. After examining these packets Hurley turned to the defendant, who was standing nearby, and asked, ‘Does your wife know anything about this?’ Defendant answered, ‘No, it’s all mine.’ He then proceeded to tell the officer what was in each packet.
“ Immediately thereafter the defendant was placed under arrest. Following such arrest he was permitted to change his clothes and to engage in conversation with his wife without any intereference [sic]. He instructed his wife to call his attorney and the officer permitted him to remain until, after .three or four calls, his wife finally reached his attorney’s secretary and imparted to her the information as to where -the defendant was being taken.”