**Robert T. MATHIS, Sr., Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 23827.

United States Court of Appeals
Fifth Circuit.

April 28, 1967.

Rehearing Denied May 25, 1967.

**596**

Max Lurie, Nicholas J. Capuano, Miami, Fla., for appellant.

James W. Matthews, Michael J. Osman, Asst. U. S. Attys., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before PHILLIPS,* THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge.

Appellant was convicted on both counts of a two-count indictment charging him with having knowingly filed false claims for income tax refunds in 1960 and 1961 in violation of 18 U.S.C. § 287.

On October 30, 1964, an Internal Revenue agent interviewed appellant, who was at that time incarcerated in the Florida State Penitentiary, with the object of establishing the correctness of a 1960 tax return bearing appellant's signature. At that interview appellant identified the tax return and the signature thereon as his. He also signed a Form 872 [1] extending the limitation period on his 1960 return, thereby giving the Government additional time to investigate the return and determine the proper tax liability.[2]

Again, on March 2, 1965, a second interview was conducted with appellant at which time he identified a 1961 tax return bearing his signature and signed another Form 872 extending the limitation period. On March 10, 1965, the interviewing agent, who was not a criminal investigator, referred appellant's case to

the Internal Revenue Intelligence Division as involving definite indications of fraud. On June 9, 1965, an agent of the Intelligence Division, accompanied by the original interviewing agent, sought to interview appellant in conjunction with the then pending criminal investigation. At the beginning of that interview, appellant was advised of his constitutional rights whereupon he refused to cooperate further. Over appellant's objections at the trial, the Government was permitted to introduce the documents executed by appellant during the two initial interviews together with testimony that appellant had on those two occasions admitted having filed the 1960 and 1961 tax returns bearing his signature.

On this appeal, appellant relies solely upon Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, in urging that the trial court erred in admitting into evidence the testimony and documents obtained at the two interviews because he was not on either occasion warned that he had a right to remain silent, that any statement he made might be used in evidence against him, and that he had a right to the presence of counsel. In seeking to bring his case within the purview of *Miranda* appellant would attribute great weight to two facts: (1) that throughout the investigation there was a *possibility* that subsequent criminal charges might be brought; and (2) that he was incarcerated at the time the two interviews were conducted. Convinced that neither of these circumstances bring appellant's case within the ambit of *Miranda,* we affirm.

The evidence clearly reflects that until March 10, 1965, when appellant's case was initially referred to agents of the Intelligence Division, the inquiry involving appellant's tax returns represented no more than a routine civil tax investigation. Indeed, it was not until

---

1. Of the Tenth Circuit, sitting by designation.

1. Formally designated "Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax."

2. Prior to executing the form, appellant was advised that he was under no obligation to sign it.

November 23, 1965, over eight months later, that an indictment was returned charging appellant with the filing of a fraudulent claim. No arrest warrant was executed until April 21, 1966. At both of the interviews in question, appellant was fully informed of the Government's concern with the accuracy of his tax returns and he voluntarily cooperated with the investigating agent, there being no misrepresentation, fraud, deceit, or misconduct employed to gain such co-operation. It cannot be disputed that incident to every routine tax audit there exists a *possibility* that evidence of fraud may be uncovered, perhaps resulting in a referral of the case to the Intelligence Division. It is also possible to view the taxpayer as the sole "suspect" in a tax investigation from its very beginning, thus clouding the distinction between the "investigative" and "accusatorial" stages of inquiry. We are convinced, however, that the presence of neither of these factors is sufficient to render a routine civil tax investigation equivalent to an inquiry into an unsolved crime. See Kohatsu v. United States, 9th Cir. 1965, 351 F.2d 898, cert. denied, 1966, 384 U. S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017; United States v. Fiore, W.D.Pa.1966, 258 F.Supp. 435; Bohrod v. United States, W.D.Wis.1965, 248 F.Supp. 559.

Neither does the mere circumstance that appellant was incarcerated under a sentence for an unconnected offense at the time of the audit interviews in any way necessitate application of the *Miranda* safeguards. In expressly limiting application of its decision to cases involving "custodial interrogation," the Court in *Miranda* stated:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]

384 U.S. at 444, 86 S.Ct. at 1612, 16 L. Ed.2d at 706. Such language obviously contemplates the incommunicado interrogation of individuals in a police-dominated atmosphere—interrogation incident to the investigation of an unsolved crime. On the dates of the interviews in the case before us, no criminal investigation had even been formally instituted. Clearly, the fact that such interviews were conducted while appellant was serving a state sentence cannot be properly viewed as subjecting him to the overbearing psychological pressures incident to the "custodial interrogation" contemplated in *Miranda*.

The judgment of the district court is accordingly

Affirmed.

---

4. This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused.