Jacob J. FROHMANN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18576.

United States Court of Appeals
Eighth Circuit.

July 27, 1967.

Rehearing Denied Aug. 24, 1967.

James Q. Brown, Clayton, Mo., Robert E. Johnson, of Krieg, DeVault, Alexander & Capehart, Indianapolis, Ind., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before VOGEL, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Jacob J. Frohmann, after a plea of not guilty, was tried in July 1966 and convicted by a jury on both counts of a two-count information charging him with violating 26 U.S.C. § 7203 in willfully failing to make federal income tax returns for the calendar years 1959 and 1960. Judge Meredith imposed a sentence of one year on each count and directed that the sentences be served concurrently. The defendant appeals.

Reversible error is alleged with respect to the admission of evidence, comment by the trial judge, and the rejection of evidence proffered by the defense. There is no claim that the evidence which was admitted was not sufficient to support the verdict.

In the years in question Frohmann was engaged in the business of developing and dealing in commercial real estate in the Saint Louis area. His federal income tax returns for the calendar years 1958-64, inclusive, were all delinquently filed. The 1958 return was filed in July 1962 after a revenue agent appeared on the scene. An amended return for that year and the returns for 1959-64, inclusive, were filed on December 11, 1965.

Frohmann does not deny that he had income sufficient to require him to file returns for 1959 and 1960 or that he failed to file those returns when they were due. He admitted this on direct examination.[1] He does deny that his failure to file was willful or with any intent to deprive the government of that to which it was entitled.

The defendant's tax difficulties center in the development and sale of a shopping center in Saint Charles, Missouri, dealings in options, the sale of an apartment, and rental from a bank building.

The government produced witnesses who testified as to the defendant's business activities and the amounts he received in various transactions. Some of these involved substantial figures. The government's evidence tended to show that the defendant's 1959 gross income was $55,502.41 and his 1960 gross income was $36,522.50. The latter figure contrasts with a gross of over $24,000.00 but a net loss of $50,362.63 asserted by the defendant on his 1960 return as delinquently filed. This difference is due to variance in treatment of the apartment sale, and to a rental loss asserted by the defendant on the bank building but claimed by the government to be a corporate and not an individual transaction.

Some emphasis is placed on the defendant's background. He testified: He was born in Saint Louis in 1910. His parents were European immigrants who were uneducated and spoke little English. He attended school in this country through the fourth grade and then was taken to Europe and apprenticed in a dry goods store there for about five years. He returned to Saint Louis and finished the fifth grade when he was 16 years old. His elementary education was then dis-

---

1. Q. Let's go to the year 1959 and concerning the income tax for that year, or take them both together, 1959 and '60, can you tell the jury, and I want you to consider your answer to this question as best you recall, why you did not file the returns at the time that they were due for those years?
A. Well, I knew that they must be filed, that they had to be filed, but I didn't, couldn't do it in time. I just could not do it in time. But then I did not know that I might be charged criminally because of it. To me it was just something like a deed of trust or note that you owe. I mean if you are past due, well you owe additional interest and so on, but I didn't know that I would be charged as a criminal; no.

continued and he went to barber school. After barbering for a time he became interested in real estate and, although he was never licensed, went to work as a salesman for real estate companies. In 1942 he started to work for himself. He operated out of his home until 1955 and then took desk space at a real estate office.

There is testimony that the defendant has been substantially blind in one eye since childhood, has been deaf in one ear since 1940, and has had cardiac disease since 1959.

Mr. Frohmann kept no books. His only records are papers relating to his real estate transactions.

A. The testimony of the witness Schneider and the court's refusal to grant a mistrial.

Edward C. Schneider, an attorney, was a witness called by the government. He testified that in the summer of 1959 he was retained by the defendant to represent him in connection with the acquisition of an apartment house corporation. There were negotiations with the attorney for the seller as to the contents of the sale contract. The transaction was closed in a title insurance company office. On direct examination of Mr. Schneider, the following took place:

Q. Now subsequent to the exchange did you have a conversation with Mr. Frohmann relative to the property, the profits on it? Would that be correct?

A. No. I might say this, well, I will clarify it. My duty was at an end after I assigned the contract over to Mr. James and Effie James.

Q. To Mr. James and Effie James.

A. Then the closing end of the Jennings and West Pine took place after we had consummated. Now as far as the profit was concerned in dollars and cents, I would have no knowledge of that.

Q. Did you have any conversation with him relative to reporting that?

A. Well, I told him this: I was very certain—

Mr. Brown: Wait a minute. I am going to object to any statement he may have made. In the first place, there is no showing he was authorized to act in that capacity, and if he was, he was his attorney. I think counsel knows better than to ask a question like that.

At this point the jury was excused. At the bench the government offered to prove that, after the witness had completed his legal services for the defendant, he conversed with him and told him that, if he had gains from these transactions, they should be reported and "that he had better get himself an accountant and find out what had transpired". After the noon recess the government informed the court that it would not further pursue this line of questioning. The defense repeated its claim of privilege and moved for a mistrial. This motion was overruled but the court stated, "If you desire any special instruction at this time to the jury or later, I will give it". No request for an instruction was made and no further question was asked of Mr. Schneider.

■■■ The defense claims that the quoted questions and answers show that the defendant could only have received advice from this attorney to report his profit and that this was particularly prejudicial because it was the only direct evidence of advice to the defendant as to the necessity of filing a return and thus seriously affected his defense of nonwillfulness.

We decide this issue against the defendant and do so because we perceive no prejudice. As we have noted, Frohmann himself testified on his direct examination, and thus told the jury, that he knew that a return had to be filed for 1959. Although this came later in the trial than the Schneider testimony, no claim is made that it was occasioned by that testimony or that Frohmann would not have so testified if Schneider had not said what he did. With the duty to file thus conceded,

we fail to see how advice from Schneider as to the necessity for filing—if Schneider's answer can be regarded as stating that much—adds anything at all. Furthermore, our decision is fortified by the failure of the defense to proffer a curative instruction when the court offered to give one if it were desired, and by our awareness that the allowance of a mistrial motion is a matter for the trial court's discretion. Evenson v. United States, 316 F.2d 94, 95-96 (8 Cir. 1963); Dolan v. United States, 218 F.2d 454, 460 (8 Cir. 1955), cert. den., 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255. Certainly we do not find here the "clear and obvious abuse of a trial court's discretion" which alone justifies reversal. Schaefer v. United States, 265 F.2d 750, 753 (8 Cir. 1959), cert. den. 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82.

B. The testimony of Revenue Agent Parker and the application of the *Escobedo* and *Miranda* rules.

Agent Parker testified that, in connectionwith his examination of the returns of a person with whom the defendant had real estate transactions, he requisitioned the defendant's 1959 return; that this request was not productive; that he communicated with Frohmann and asked him to present the check with which he had paid his 1959 tax; that the defendant said he would do this but the check was not forthcoming; that shortly thereafter a man named Kuehn came to Parker's office and said he was an attorney representing Frohmann; that on many occasions in 1961 and in the first part of 1962 he asked the defendant for records to determine his income; that no records were produced; that in June or July of 1962 he went to Mr. Kuehn's residence and reviewed papers which the defendant had there; that this was done with the defendant's permission given to Mr. Kuehn; that in July Kuehn filed the 1958 delinquent return for the defendant; that on August 16, 1962, there was a conference in the Internal Revenue Service office attended by Kuehn, Frohmann, Parker and Special Agent Stieferman;

that Stieferman there advised the defendant that he had a right not to answer any question; that Frohmann replied that he "did not intend to use that privilege, he would give us anything we wanted"; and, over objection, that the defendant stated that his returns were not filed "because he didn't have the money to pay the tax".

It is the admission of this last response which the defense now challenges. It is suggested that this is not entirely consistent with the defendant's own testimonial statement, set forth in the footnote, supra, as to the reasons for his delinquency.

Although conceding that the defendant was not in custody at the time this statement was made, the defense advances the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and claims that these have application to this 1962 internal revenue service conference at which a special agent was present and whose presence implied a criminal aspect to the investigation.

The government asserts that the defendant concededly was advised that he need not speak; that, however, he waived his right to remain silent; that, although he was not warned of his right to counsel, this fact is of no consequence because his own counsel, Kuehn, was present; and that, in any event, internal revenue agents in the investigatory phase of a case, and prior to custody, have the right to make inquiry of a taxpayer without the formalities which *Escobedo* and *Miranda* may now require for custody situations.

In response the defense argues that, although Mr. Kuehn was a lawyer, he was over 80 years of age and the record does not show that he was representing the defendant in a legal capacity as contrasted with acting as an accountant who prepared tax returns for him.

Whenever the question has been presented to a court of appeals, the court has

refused to extend the *Escobedo* and *Miranda* requirement for the rendition of advice as to the right to counsel to the situation of a precustody internal revenue service inquiry. Morgan v. United States, 377 F.2d 507 (1 Cir. 1967); Schlinsky v. United States, 379 F.2d 735 (1 Cir. 1967); Mathis v. United States, 376 F.2d 595 (5 Cir. 1967); United States v. Maius, 378 F.2d 716 (6 Cir.1967); Kohatsu v. United States, 351 F.2d 898 (9 Cir. 1965), cert. den. 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017; Rickey v. United States, 360 F.2d 32 (9 Cir. 1966), cert. den. 385 U.S. 835, 87 S.Ct. 80, 17 L. Ed.2d 69; Selinger v. Bigler, 377 F.2d 542, (9 Cir. 1967), cert. applied for June 30, 1967. See United States v. Spomar, 339 F.2d 941 (7 Cir. 1964), cert. den. 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270. The great majority of unappealed district court cases in which the question has arisen are to the same effect. Bohrod v. United States, 248 F.Supp. 559, 564-566 (W.D.Wis.1965); Smith v. United States, 250 F.Supp. 803 (D.N.J.1966); United States v. Fiore, 258 F.Supp. 435 (W.D.Pa.1966); United States v. Hill, 260 F.Supp. 139 (S.D.Cal.1966); United States v. Carlson, 260 F.Supp. 423 (E.D. N.Y.1966); United States v. Spinney, 264 F.Supp. 774 (D.Mass.1966); Stern v. Robinson, 262 F.Supp. 13 (W.D.Tenn. 1966); United States v. Gleason, 265. F.Supp. 880, 883 (S.D.N.Y.1967); United States v. Neves, 269 F.Supp. 158 (S.D.N.Y.1967); United States v. Rabin, 271 F.Supp. 190 (S.D.N.Y.1967).

To the contrary, seemingly, are only United States v. Turzynski, 268 F.Supp. 847, (N.D.Ill.1967); United States v. Kingry, 67-1 USTC par. 9262, 19 AFTR 2d 762 (N.D.Fla.1967); and United States v. Schoenburg, 67-1 USTC par. 9393 (D.Ariz.1965). See United States v. Harrison, 265 F.Supp. 660 (S.D.N.Y. 1967). But Mr. Justice Douglas dissented from the denial of certiorari in Thomas v. United States, 386 U.S. 975, 87 S.Ct. 1164, 8 L.Ed.2d 133 (1967), with the observation that, "This is not an in-custody case, but it is a coercive examination of a taxpayer at a critical preliminary hearing, so to speak, and the question presented apparently is a recurring one".

All these cited cases have been decided since *Escobedo* and many of them since *Miranda*. Their facts, of course, vary. It is clear, however, in a number of them, that the internal revenue service review had reached the stage where a special or intelligence agent was in the case and was present at the conference.

For us, the majority authorities comprise an impressive list and we would be loathe to oppose them.

The present case, however, is not without its other features and we may therefore regard the *Escobedo-Miranda* issue, and the question of the extension of the "custodial interrogation" language, p. 444 of 384 U.S., p. 1612 of 86 S.Ct. to noncustodial internal revenue service conferences, as one not squarely presented to us here.

■ It is not disputed that Mr. Kuehn was a lawyer. Although the record may not positively demonstrate that the defendant retained him as an attorney, neither does it positively demonstrate that the defendant retained him only in a capacity other than legal. Agent Parker testified that Mr. Kuehn told him that he was the defendant's lawyer. And he did prepare the first 1958 return for the defendant filed in July 1962 (as well as his returns for earlier years). He thus performed services which, in the delinquency atmosphere of this case, certainly had legal overtones. We feel that the court could properly conclude that Mr. Kuehn was acting in the capacity of attorney for Mr. Frohmann at the time of the conference on August 16, 1962, when the challenged statement was made. Any basis for a claim of deprival of advice as to the right to counsel thus evaporates. We are not satisfied, either, that this record shows that the investigation had attained what is to be described as the accusatory stage or that there is any significantly apparent inconsistency in the defendant's testimony.

In summary, the factual situation here falls far short of what has been determined to be of constitutional magnitude in *Escobedo* and *Miranda* and which was persuasive upon the Supreme Court in those cases.

C. Comments by the court.

■ The comments by the court, which the defense claims were influential upon the jury and prejudicial, were made during the examination of witness Lewis A. Mueller, a certified public accountant employed by the defendant to prepare his delinquent returns. Mr. Mueller was hired, at the suggestion of counsel, in late 1963 to set up the records for a shopping center. He became aware of the defendant's personal income tax problems in early 1965. On direct examination Mr. Mueller was questioned about the difficulties he incurred in getting detailed information for the preparation of the returns and about the incomplete and uninformative nature of the initial 1958 return prepared by Mr. Kuehn and filed in 1962. The court indicated general agreement with government objections that what happened in 1965 or in 1962 was not material to the issue and that the year 1958 was not the subject of charges against the defendant and, on occasion, itself asked questions of the witness.

The defense complaint here is that the trial court demonstrated impatience to get Mr. Mueller off the stand, indicated that it thought his testimony to be of little importance, and, by its own questions, showed that it considered the defendant's failure to obtain assistance or an extension of time for filing as indicative of willfulness.

No objection based on the court's demeanor or alleged influence was made during the trial. In its instructions the court told the jury that it meant to express no opinion and that it was for the jury and not the court to determine facts.

We have carefully read witness Mueller's entire examination and we do not at all agree with the defense's characterization of the trial court's actions. For the most part, the information elicited from the witness eventually came in anyway. It may be that one engaged in the defense of the suit might find himself inclined to believe that the court is becoming impatient. We find nothing here, however, which is any different from what takes place in any lawsuit where the trial judge has ruled as to the limits of testimony and is consistently confining counsel to those limits. The court, it seems to us, was doing no more than maintaining a normal and fairly tight rein on a tax case in order to keep it moving along and to prevent its being bogged down in statistical detail of questionable pertinency upon the real issue, namely, the defendant's state of mind as to the filing of returns for 1959 and 1960 when they were due.

There is nothing here which can be characterized as abusive or unfair or which approaches plain error as contemplated by Rule 52(b), Fed.R.Crim.P.

D. The exclusion of evidence offered by the defense.

■ This was of three types: (1) the files of three state court cases (in one of which defendant had counsel of record) in which default judgments were obtained against the defendant in 1962, 1963 and 1964 in amounts exceeding $65,000.00 in the aggregate; (2) income tax computations made by Mr. Mueller for the defendant for 1959 and 1960 which would show a loss for 1960 entitling the defendant to the benefit of a net loss carryback, under § 172 of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 172, to prior tax years, a benefit which the defendant by his failure to file did not claim, and (3) the delay of the Internal Revenue Service for more than a year in furnishing a duly requested Form 899 for the defendant. This form is a record of a taxpayer's returns, assessments and payments. It was eventually produced here only 11 days prior to trial. The defense

asserts that the evidence in the first two categories tended to show the defendant's incapacity and an absence of willfulness on his part, and that the evidence in the third category demonstrated that the government does not adhere to its own standards, and tended to impeach the testimony of revenue agents who said they had no bias against the defendant.

We perceive no prejudicial error. The delay in the furnishing of Form 899 has no bearing, apparent to us, upon the issue of willfulness and we see no prejudice, nor is any claimed, in the delay. The defense had the form and the information it disclosed for several days prior to trial. The state court files and the Mueller computations perhaps could have been admitted, but there are limits to what may be considered as reasonably connected. This type of material, in our view, clearly falls within the broad area of the trial court's discretion as to materiality or relevancy. See Cotton v. United States, 361 F.2d 673, 676 (8 Cir. 1966); Clark v. United States, 211 F.2d 100, 105 (8 Cir. 1954), cert. den. 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714; Wilson v. United States, 250 F.2d 312, 325–326 (9 Cir. 1957). We find no abuse in the court's rejection of the evidence on the ground of remoteness and irrelevancy and, indeed, we agree with the court's rulings.

We do not hesitate to say in conclusion that this case strikes us as a weak one for the defense. It is easy to understand why a jury, itself composed of taxpayers, would not be persuaded by the explanation for nonfiling which Mr. Frohmann offered. The case is reminiscent of Sansone v. United States, 334 F.2d 287 (8 Cir. 1964), aff'd 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). It has, of course, its tragic aspects, as most income tax criminal cases do, but we are not prepared to say that this record discloses or even intimates that it was tainted with prejudicial error.

Affirmed.