**UNITED STATES of America**

v.

**Frank A. JASKIEWICZ.**

**Crim. No. 22706.**

United States District Court
E. D. Pennsylvania.

Jan. 2, 1968.

As Amended Jan. 17, 1968.

See also 3 Cir., 362 F.2d 942.

Drew J. T. O'Keefe, U. S. Atty., Joseph H. Reiter, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Leonard Sarner, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

This matter is before the Court for disposition of several motions made by defendant in advance of trial.

On or about November 22, 1966, the defendant, Frank A. Jaskiewicz, was indicted in this Court for attempting to evade or defeat a large part of his individual income tax for the calendar years 1960 to 1963, inclusive.[1] On or about December 14, 1966, the defendant was arraigned in this Court and entered a plea of not guilty as charged.

We have before us for disposition the defendant's motions for a bill of particulars, to suppress certain evidence and to dismiss the indictment. In that each of the several motions involve different factual and/or legal issues, they will be discussed *seriatim*.

## MOTION FOR BILL OF PARTICULARS

*In item one* of his motion, the defendant requests the Court to direct the attorney for the United States to inform him of the method of computation to prove alleged unreported income; if it is the net worth and expenditure method of computation the defendant seeks additional information concerning the period during which the Government will offer proof of the defendant's net worth, the date of the opening net worth and the opening and closing net worth for each year in the period the Government will offer its proof, including specific items for each year in the period as set forth in his motion. The attorney for the Government has advised counsel for the defendant that the Government is relying on the net worth and expenditure method of computation; the defendant has withdrawn his motion with respect to the remaining particulars requested in item one. Accordingly, in that the parties have amicably resolved their differences with respect to item one, no further comment need be made with respect thereto.

*In item three* of his motion, the defendant requests the Court to direct the attorney for the Government to inform him of the source of the alleged unreported income, specifying whether it is from criminal activity; and, if it is from criminal activity, specify the nature of the alleged criminal activity. *In item two* of his motion, the defendant requests the Court to direct the attorney for the Government to furnish him with a list of the

---

1. 26 U.S.C. § 7201 provides:

"§ 7201. Attempt to evade or defeat tax. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A. Stat. 851."

names and addresses of witnesses the Government intends to use at the trial; however, since the filing of his motion, the defendant has limited his request for the names and addresses of witnesses to those that the Government intends to use to identify the defendant with the source of the alleged unreported income, if that source be criminal.

■ An application for a Bill of Particulars, made pursuant to the provisions of Rule 7(f) of the Federal Rules of Criminal Procedure,[2] is one addressed to the sound discretion of the Court. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); United States v. Kafes, 214 F.2d 887 (3rd Cir. 1954). In exercising its discretion, it is the function of the Court to insure that the Government has presented its allegations with sufficient particularity and definiteness to unequivocally inform the accused of the specific nature of the charges upon which the indictment is laid. The extent to which the accused should be so informed must be considered in the light of the recent amendment to Rule 7(f) which, in eliminating the necessity of showing cause for the grant of a Bill of Particulars, was "designed to encourage a more liberal attitude by the courts toward bills of particulars, without taking away the discretion which courts must have in dealing with such motions in individual cases". See Advisory Committee's Note to 1966 Amendment to Rule 7(f), Federal Rules of Criminal Procedure.

■ The net worth method of proving that a taxpayer has understated his net taxable income involves a comparison of the taxpayer's net worth at the beginning of the taxable year with his net worth at the end of the year, with appropriate adjustments for nontaxable receipts and nondeductible expenditures. A group of Supreme Court decisions af-

firmed convictions in four cases where the net worth method was used; but the opinions expressed grave concern for the potential abuses of the method, and attempted to set the permissible limits for this type of prosecution. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188 (1954); Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954). One such limitation is that the Government must show more than an increase in net worth; i. e., evidence must be introduced which will support an inference that the net worth increase is attributable to currently taxable income. To sustain its burden in this regard, the Government must establish that there is a likely source of or negate all possible nontaxable sources for the net worth increase. Holland v. United States, supra; United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958).

■ Recognizing the potential abuses inherent in the net worth method, and the consequent burden placed upon the Government in establishing its case, it would appear that an accused in a net worth case is not only entitled to be informed of the nature of the charge or claim against him, but the charge or claim must be so distinct and so specific as to minimize the potential abuses inherent in a net worth prosecution. Since the Supreme Court has directed, as a condition precedent to conviction in a net worth case, that the Government introduce evidence which will support an inference that the net worth increase is attributable to currently taxable income, the accused should have a reasonable opportunity to rebut that inference. To afford an accused such an opportunity, it

---

**2.** Rule 7(f) of the Federal Rules of Criminal Procedure:

"(f) Bill of Particulars. The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires. As amended Feb. 28, 1966, Eff. July 1, 1966."

is essential that he be informed in advance of trial of whether the Government intends to prove the existence of a likely source, and if so, the nature of that source, or intends to negate all possible nontaxable sources. This is especially true today when the criminal discovery rules are being liberalized to afford the defendant the opportunity to more adequately prepare his defense. In commenting upon the liberalization of the criminal discovery rules in connection with a net worth case, the District Court, in United States v. Rosenfeld, 264 F.Supp. 760, at page 763 (N.D.Ill.1967), in compelling the Government to disclose the likely sources of the alleged unreported income, stated:

"* * * The time is rapidly approaching when 'surprise' will be eliminated from the criminal trial, and the 'sporting theory of justice' will be a relic of the past for criminal defendants as it is already for civil litigants. See e. g. Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth, 1963 Wash.U.L.Q. 279; Everett, Discovery in Criminal Cases—In Search of a Standard, 1964 Duke L.J. 477."

■ Accordingly, assuming the Government intends to prove a likely source, we grant defendant's motion for a Bill of Particulars with respect to item three, to the extent the information requested therein is available to the Government.

■ While a Bill of Particulars may require disclosure of certain items, it is not a device by which a defendant may compel the Government to disclose its evidence in advance of trial. Wong Tai v. United States, supra. The "more liberal attitude" suggested by the Advisory Committee in their Amendment to Rule 7(f) is not meant to alter the primary purpose of a Bill of Particulars which is to apprise the defendant of the crime charged with sufficient particularity so as to enable him to prepare a proper defense and avoid prejudicial surprise at trial. The names and addresses of witnesses is normally an evidentiary matter and since the defendant is not charged with "treason or other capital offense" the defendant's motion for their disclosure is addressed to the discretionary power of this Court.[3] The only reason advanced by the defendant for his request is that were it denied it would be "exceedingly and unreasonably difficult". Although "* * * it is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial" (Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305, opinion of 11/13/67), this Court is of the opinion that the reason advanced by the defendant in the case *sub judice*, if indeed it be a reason, is not so compelling as to warrant this Court in deviating from the general rule that the names and addresses of witnesses is purely an evidentiary matter and their disclosure is not required in advance of trial. United States v. Diliberto, 264 F.Supp. 181 (S.D.N.Y. 1967); United States v. Baker, 262 F. Supp. 657 (D.C.D.C.1966); United States v. Chase, 372 F.2d 453 (4th Cir. 1967); United States v. Margeson, 261 F.Supp. 628 (E.D.Pa.1966). Accordingly, the defendant's motion with respect to item two is denied.

## MOTION TO SUPPRESS

*In item one* of his motion, the defendant requests the Court to suppress the testimony and workpapers of his accountant, Allen Speiser, on the ground that his compelled testimony would violate the accountant-client privilege cre-

3. 18 U.S.C. § 3432 provides:

"§ 3432. Indictment and list of jurors and witnesses for prisoner in capital cases.

"A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness. June 25, 1948, c. 645, 62 Stat. 831."

ated by a Pennsylvania statute which provides:

"§ 9.11a Privileged communication

"Except by permission of the client or person or firm or corporation engaging him or the heirs, successors or personal representatives of such client or person or firm or corporation, a certified public accountant or a person employed by a certified public accountant shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed relative to and in connection with any professional services as a certified public accountant other than the examination of audit of or report on any financial statements, books, records or accounts, which he may be engaged to make or requested by a prospective client to discuss. The information derived from or as the result of such professional services shall be deemed confidential and privileged: Provided, however, That nothing herein shall be taken or construed as modifying, changing or affecting the criminal or bankruptcy laws of this Commonwealth or of the United States. 1947, May 26, P.L. 318, § 11.1, added 1961, Sept. 2, P.L. 1165, § 8."
(See 63 P.S. § 9.11a)

 In the absence of a statute, there is no privilege with respect to communications made to an accountant by an employer for the purpose of preparing financial statements or doing other work characteristically performed by accountants. Since the privilege is in derogation of the common law and an exception to the general rule that all persons having knowledge of the facts are required to testify, the Pennsylvania statute creating the privilege must be strictly construed. Indeed, Professor Wigmore has cautioned against the expansion of privileges, stating:

"For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule:

\* \* \* \* \* \*

"(3) \* \* \* The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide, without any real necessity, an obstacle to the administration of justice."

(See 8 Wigmore on Evidence (McNaughton Revision 3rd Ed.) Sec. 2192, pp. 70, 73.)

 Keeping in mind that the investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges, the Pennsylvania statute creating the privilege contains a proviso whereby: " \* \* \* nothing herein shall be contained or construed as modifying, changing or affecting the criminal \* \* \* laws \* \* \* of the United States". The construction of the statute urged by counsel for the defendant would certainly affect the criminal laws of the United States and the application of the statute under those circumstances is precluded by its express terms. We need not, therefore, reach the broad question as to whether an accountant-client privilege created by State law can prevail in the execution of Federal tax laws inasmuch as in the instant case the provisions of the Pennsylvania statute clearly except from its coverage the privilege asserted by the defendant.

 However, assuming *arguendo* that the Pennsylvania statute extends to defendant the privilege which he seeks to assert, it seems clear that it is not applicable in a Federal criminal trial. In Falsone v. United States, 205 F.2d 734 (5th Cir. 1953), an internal revenue

agent served a summons on a certified public accountant to compel the accountant to appear before the agent and testify concerning the tax liability of taxpayers and to compel the accountant to bring with him certain books and papers relating to income tax returns of the taxpayer. One of the arguments advanced by the accountant was that the State of Florida, by specific statute, has made privileged all communications between certified public accountants and their clients. The 5th Circuit held that the competency and privilege of witnesses is not governed by State law and the accountant could not rely upon the Florida statute to avoid disclosure.

Similarly, the Second and Seventh Circuits have approved the rationale of Falsone v. United States, supra; Federal Trade Commission v. St. Regis Paper Co., 304 F.2d 731 (7th Cir. 1962); Colton v. United States, 306 F.2d 633 (2nd Cir. 1962). The Court of Appeals for this Circuit has not as yet had an opportunity to squarely pass upon the question of the applicability of the Pennsylvania statute involved herein, but the decisions of the Circuit Court, and of the District Courts within this Circuit, seem to indicate that they are in agreement with the decision in the *Falsone* case.

In Lustman v. Commissioner Internal Revenue, 322 F.2d 253 (3rd Cir. 1963), taxpayers sought review of a decision of the Tax Court wherein it was determined that there were deficiencies in the tax liability reported for the years in question. In commenting upon the accountant-client privilege, the Court noted as follows at page 259:

"Confidential communications between a client and an accountant are not generally recognized as privileged. There is no sanction for the privilege in common law. See 8 Wigmore, Evidence, § 2286 (McNaughton rev. 1961). And there is no state or federal statute applicable here which would confer such privilege. Moreover, where records relating to tax liability are the subject matter of inquiry, the Internal Revenue Code, Section 7602 (26 U.S.

C.A. § 7602), negates any privilege which might otherwise exist. See Falsone v. United States, 5 Cir. 1953, 205 F.2d 734, cert. den. 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375; In the Matter of Fahey, D.C.Ky.1961, 192 F.Supp. 492, aff'd 6 Cir. 1961, 300 F. 2d 383."

Although the Court's decision, as manifested by the above quotation, involved communications which were prior to the Pennsylvania statute conferring the privilege, the Court did cite the *Falsone* case with approval. Indeed, in United States v. Bowman, 236 F.Supp. 548, at page 551 (M.D.Pa.1964), in commenting upon the *Falsone* case, the Court noted that: "In my opinion, the decision in the Falsone case (supra) is based on sound and logical reasoning. The great weight of authority appears to be in agreement with it". Although on appeal in United States v. Bowman, 358 F.2d 421 (3rd Cir. 1966), the Circuit Court did not find it necessary to squarely pass upon the applicability of the Pennsylvania statute conferring the accountant-client privilege, it is the conclusion of this Court that although the rule might be different in diversity cases, a State-created accountant-client privilege is not applicable in a Federal criminal trial.

This is especially true in view of Rule 26 of the Federal Rules of Criminal Procedure which provides, inter alia:

"* * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Moreover, insofar as Mr. Speiser's being required to testify before the Grand Jury is concerned, this question has been decided in this very case adverse to the contentions of the defendant by Judge Van Dusen, then a member of the District Court and now a member of the Court of Appeals, in his "Memorandum In Amplification of Ruling Directing

Allen Speiser to Testify Before The Grand Jury". See In Re: Grand Jury Investigation Concerning Frank A. Jaskiewicz, Misc. No. 3256, April 22, 1966.

Accordingly, the defendant's motion to suppress the testimony and workpapers of his accountant is denied.

■ *In item two* of his motion, the defendant requests the Court to suppress evidence of any written, recorded or oral statements or confessions of the defendant obtained by Government agents, and any leads obtained therefrom.

The record shows that the Internal Revenue Service undertook an investigation of the income tax liabilities of the defendant on or about December 3, 1962. The agent who was assigned to investigate the civil tax liability of the defendant was Constantine A. Daniels. Pursuant to his investigation, Mr. Daniels met with the defendant on or about March 26, 1963. Mr. Daniels gave the defendant no warnings with respect to his alleged constitutional rights to remain silent, not to incriminate himself, to representation by counsel and the like.

On or about April 14, 1964, Mr. Daniels referred the matter to the Intelligence Division for investigation by a special agent with a view towards possible recommendation of criminal prosecution of the defendant. The special agent assigned to investigate the case was Joseph V. Maser. On or about June 9, 1964, when the defendant's accountant was confronted by Mr. Maser and informed that the investigation had changed in character from civil to criminal, the accountant arranged a meeting with the agents at the defendant's place of business. On or about June 11, 1964, pursuant to the arrangements made by the defendant's accountant, Messrs. Maser and Daniels met with the defendant at the defendant's place of business to discuss the matter.

The defendant was warned of his constitutional rights to remain silent and not to incriminate himself. He was not warned of his right to representation by counsel. Although neither agent informed the defendant that the investigation had changed in character from one of concern with civil tax liability to one with a view toward possible recommendation of criminal prosecution, as was noted previously, Mr. Maser had so informed the defendant's accountant who thereafter arranged the meeting. Moreover, Mr. Maser identified himself to the defendant as a special agent and a special agent by nature is one conducting an investigation with a view towards possible recommendation of criminal prosecution.

Although conceding that the defendant was not in custody at the time the meetings were held, the defense advances the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964), and of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and claims that these have application to both meetings because the defendant was not given any warnings at the first meeting and was not warned of the criminal character of the investigation and his right to representation by counsel at the second meeting.

In commenting upon the Escobedo-Miranda issue, and the question of the extension of the "custodial interrogation" language, p. 444 of 384 U.S., 86 S. Ct. 1602, to noncustodial internal revenue service conferences, the Court of Appeals for the 8th Circuit, in Frohmann v. United States, 380 F.2d 832 at pages 835 and 836 (8th Cir. 1967), stated:

"Whenever the question has been presented to a court of appeals, the court has refused to extend the Escobedo and Miranda requirement for the rendition of advice as to the right to counsel to the situation of a pre-custody internal revenue service inquiry. Morgan v. United States, 377 F.2d 507 (1 Cir. 1967); Schlinsky v. United States, 379 F.2d 735 (1 Cir. 1967); Mathis v. United States, 376 F.2d 595 (5 Cir. 1967); United States v. Maius, 378 F.2d 716 (6 Cir. 1967); Kohatsu v. United States, 351 F.2d 898 (9 Cir. 1965), cert. den. 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017;

Rickey v. United States, 360 F.2d 32 (9 Cir. 1966), cert. den. 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 69; Selinger v. Bigler, 377 F.2d 542 (9 Cir. 1967), cert. applied for June 30, 1967. See United States v. Spomar, 339 F.2d 941 (7 Cir. 1964), cert. den. 380 U.S. 975, 85 S.Ct. 1336, 14 L.Ed.2d 270. The great majority of unappealed district court cases in which the question has arisen are to the same effect. Bohrod v. United States, 248 F.Supp. 559, 564–566 (W.D.Wis.1965); Smith v. United States, 250 F.Supp. 803 (D.N.J.1966); United States v. Fiore, 258 F.Supp. 435 (W.D.Pa.1966); United States v. Hill, 260 F.Supp. 139 (S.D.Cal.1966); United States v. Carlson, 260 F.Supp. 423 (E.D.N.Y.1966); United States v. Spinney, 264 F.Supp. 774 (D.Mass.1966); Stern v. Robinson, 262 F.Supp. 13 (W.D.Tenn. 1966); United States v. Gleason, 265 F.Supp. 880, 883 (S.D.N.Y.1967); United States v. Neves, 269 F.Supp. 158 (S.D. N.Y.1967); United States v. Rabin, 271 F.Supp. 190 (S.D.N.Y.1967).

"To the contrary, seemingly, are only United States v. Turzynski, 268 F.Supp. 847, (N.D.Ill.1967); United States v. Kingry, 67–1 USTC par. 9262, 19 AFTR 2d 762 (N.D.Fla. 1967); and United States v. Schoenburg, 67–1 USTC par. 9393 (D.Ariz. 1965). See United States v. Harrison, 265 F.Supp. 660 (S.D.N.Y. 1967). But Mr. Justice Douglas dissented from the denial of certiorari in Thomas v. United States, 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133 (1967), with the observation, that, 'This is not an in-custody case, but it is a coercive examination of a taxpayer at a critical preliminary hearing, so to speak, and the question presented apparently is a recurring one'.

"All these cited cases have been decided since Escobedo and many of them since Miranda. Their facts, of course, vary. *It is clear, however, in a number of them, that the internal revenue service review had reached the stage where a special or intelligence agent was in the case and was present at the conference."* (Emphasis supplied.)

Like the Court of Appeals for the 8th Circuit, we feel that the massive weight of authority cited in its opinion adverse to the contentions of the defendant "comprise an impressive list and we would be loathe to oppose them". Frohmann, supra, p. 836.

Among the cases cited by the 8th Circuit Court of Appeals, in its opinion in *Frohmann,* supra, there were denials of certiorari in Schlinsky v. United States, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265; Thomas v. United States, 386 U.S. 975, 87 S.Ct. 1164, 18 L.Ed.2d 133; Maius v. United States, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219; and Selinger v. Bigler, 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218; and a grant of certiorari in Mathis v. United States, 389 U.S. 896, 88 S.Ct. 224, 19 L.Ed.2d 213. We recognize that the denial of certiorari imports nothing as to the merits of the case. All it means is that, for whatever reason, there were not four members of the Court who wished to hear the case. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). It is interesting to note, however, that unlike the cases in which certiorari was denied, and unlike the case at bar, in *Mathis* the defendant was incarcerated under sentence for an unconnected offense at the time of the interview with the revenue agents.

The present case, however, is not without its own peculiar features and they deserve further comment.

The evidence establishes that until April 14, 1964, when defendant's case was initially referred to agents of the Intelligence Division, the inquiry concerning the defendant's tax liability represented no more than a routine civil tax investigation. It cannot be disputed that incident to every routine tax audit there exists a possibility that evidence of fraud may be uncovered, perhaps resulting in a referral of the case to the Intelligence Division. However, the presence of this factor is certainly not suf-

**534**

ficient to render a routine civil tax investigation an investigation with a view toward the recommendation of possible criminal prosecution, thereby constituting the defendant an "accused" within the meaning of Escobedo-Miranda, entitling the defendant to warnings at the first meeting with Mr. Daniels.

At both of the interviews in question, the defendant does not expressly assert that the evidence was obtained by coercion, fraud, misrepresentation or deceit, or other than voluntarily. Rather, the defendant urges that deception was implicit in the failure of Internal Revenue agents to apprise the defendant when their investigation became in fact an inquiry into possible criminal conduct, and likewise in their failure to warn the defendant of his constitutional rights at such time.

▆▆▆ In this connection, the defendant makes reference to an Internal Revenue Service News Release, No. 897, October 3, 1967, which provides:

"On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: 'As a special agent, I have the function of investigating the possibility of criminal tax fraud'.

"If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel."

Special Agents are instructed to give the warnings prescribed by the News Release even though the taxpayer is not in custody. The defendant contends that the failure of Mr. Maser to comply with the News Release and warn him that the investigation had changed in character from civil to criminal and of his right to representation by counsel is tantamount to a deprivation of his constitutional rights. In this connection, it is to be noted that the News Release itself, which the defendant apparently contends is evidence of the fact that the right exists, recognizes that:

"Instructions issued to IRS Special Agents *go beyond most legal requirements* to assure that persons are advised of their Constitutional rights." (Emphasis supplied.)

Moreover, in the case at bar, the defendant's accountant who arranged the meeting with the special agent was informed by the agent that the investigation had changed in character from civil to criminal. However, all else to the contrary notwithstanding, constitutional rights are a matter for the Court, and the suggestion by defendant that administrative policy necessarily be raised to the level of a constitutional mandate is completely devoid of merit.

In formulating the constitutional rights at issue in the case at bar, the Supreme Court in *Miranda,* in expressly limiting application of its decision to cases involving "custodial interrogation", stated:

" * * * By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *"

(See 384 U.S. 436, at 444, 86 S.Ct. 1602, at 1612.)

Such language obviously contemplates the incommunicado interrogation of individuals in a police dominated atmosphere. On the date of the first interview, no criminal investigation had been instituted or contemplated. Although at the time of the second interview a criminal investigation had been instituted or contemplated, and the defendant may therefore have been an accused within the meaning of Escobedo-Miranda, in that the interview was conducted at the defendant's place of business and at the behest of his accountant, the defendant cannot properly be regarded as being subjected to the overbearing psychological pressures incident to the "custodial interrogation" contemplated in *Miranda.*

Accordingly, the defendant's motion to suppress evidence obtained by the Government from interviews with the defendant is denied.

## MOTION TO DISMISS

In 1964, the defendant was first informed by the Internal Revenue Service that the character of the investigation had changed from civil to criminal and that he might be criminally prosecuted for violation of the Federal income tax laws. Statutory notices of deficiency were then issued ("90-day letter"), on December 30, 1964, for the years 1957 and 1958; on April 15, 1966, for the years 1959 and 1962; on June 15, 1966, for the years 1960 and 1961, giving the defendant ninety days within which to file petitions if he wished to contest the proposed deficiencies in the Tax Court.[4] Electing to contest the asserted deficiencies, the defendant filed petitions in the Tax Court setting forth his position and alleging errors in the Commissioner's determination of deficiencies. The Department of Justice initiated the present criminal case by submitting the matter to the Grand Jury for investigation on April 21, 1966, charging the defendant with wilfully attempting to evade his Federal income taxes. On November 22, 1966, more than five months after the last statutory notice of deficiency was issued, the defendant was indicted for wilfully attempting to evade his Federal income taxes for the calendar years 1960 to 1963, inclusive.

The defendant has filed the instant motion seeking dismissal of the indictment on two grounds. The first ground for dismissal asserted by the defendant is that because of the statutory notices of deficiency and Tax Court proceeding he has been compelled and will be compelled to come forward on the same matters as are concerned in this criminal case, to testify against himself in violation of the Fifth Amendment to the Constitution. The second ground for dismissal asserted by the defendant is that there is an administrative practice of making no assessments in advance of criminal proceedings and that failure to extend the policy to him can only be equated with systematic discrimination and a violation of the equal protection aspects of the due process clause of the Fifth Amendment to the Constitution.

In United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), a case directly on point, the Supreme Court held that the lower court erred in granting the defendant's pretrial motion for dismissal of the indictment on the ground that because of the jeopardy assessment and Tax Court proceeding the defendant has been compelled and will be compelled to come forward on the same matters as are concerned in this criminal case, to testify against himself. In this connection, the Court stated,

---

4. 26 U.S.C. § 6213 provides, inter alia, as follows:

"(a) Time for filing petition and restriction on assessment.—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

\* \* \* \* \*

"(c) Failure to file petition.—If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary or his delegate."

384 U.S. 251, at pp. 254 and 255, 86 S.Ct. 1416, at p. 1419:

"On the merits of the case, we do not believe that the District Court should have dismissed the indictment. The Government has argued that the statements made by Blue in his Tax Court petitions were no more than successive denials of the alleged underpayments and do not constitute incriminating evidence. The Government has also intimated that by merely providing the occasion for the filing of Blue's petitions in fulfilling its statutory duty to make jeopardy assessments and send deficiency notices, it ought not be regarded as compelling the taxpayer to incriminate himself within the meaning of the Fifth Amendment. There is no need, however, to consider these or other contentions that may point in the same direction.

"Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure. Weeks v. United States, 232 U.S. 383, [34 S.Ct. 341, 58 L.Ed. 652]; Rogers v. Richmond, 365 U.S. 534, [81 S.Ct. 735, 5 L.Ed.2d 760]; Mapp v. Ohio, 367 U.S. 643, [81 S.Ct. 1684, 6 L.Ed.2d 1081]; Nardone v. United States, 308 U.S. 338, [60 S.Ct. 266, 84 L.Ed. 307]; Mallory v. United States, 354 U.S. 449, [77 S.Ct. 1356, 1 L.Ed.2d 1479]. Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book."

Accordingly, the defendant's motion to dismiss the indictment on the ground that the defendant has been and will be compelled to incriminate himself is denied.

■ In the *Blue* case, supra, the lower court did not expressly consider the defendant's second contention that there is an administrative practice of making no assessments in advance of criminal proceedings and that failure to extend the policy to the defendant was a denial of due process. Since this ground for dismissal was not supported by the record, the Supreme Court refused to pass upon its merits and reserved to the defendant the opportunity to articulate his argument on administrative policy on remand to the lower court: 384 U.S. at 256, 86 S.Ct. 1416.

Perhaps the best evidence of the administrative policy in question is an excerpt from the Policy Manual of the Internal Revenue Service which states, inter alia:

"The primary purpose of criminal tax proceedings is to make an example of the defendants in order to encourage public respect for the tax laws and to deter others from similar violations. Experience has demonstrated that attempts to prosecute both the criminal and the civil aspects of a case concurrently may seriously militate against success with respect to either. It is therefore necessary, in the over-all interests of enforcement of the law, that the imposition of criminal sanctions in the cases selected for prosecution should be considered paramount in relation to the civil tax aspects of the cases.

Accordingly, jeopardy and deficiency assessments will not be made, waivers and consents will not be requested, statutory notices of deficiency will not be issued nor will any other ac-

tion be taken with respect to the civil liability in cases in which a recommendation for criminal prosecution is likely or has been made, if such action would imperil successful criminal investigation or prosecution."

(See Chapter 4500, P-4560-3, Approved 3/2/60.)

The Government has argued that evidence of this administrative policy is irrelevant in that it is simply a housekeeping provision of the Internal Revenue Service and was not intended to bestow any rights upon the defendant, constitutional or otherwise. Sullivan v. United States, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954). At the hearing, we tentatively overruled the Government's objection as to the lack of relevancy of evidence pertaining to the administrative policy in question. At this point, suffice it to say that while we may ultimately agree with the Government's contention that the policy is essentially a housekeeping provision, the Government's objection at the hearing as to the lack of relevancy of the administrative policy begs the question which we have been called upon ultimately to decide; i. e., whether the failure to extend the policy to the defendant is a denial of due process.

Although it is clear from the record that there is an administrative policy in the Internal Revenue Service and in the United States Department of Justice of not issuing statutory notices of deficiency requiring petitions and replies to be filed in the Tax Court in cases in which a recommendation for criminal prosecution is likely or has been made, it does not appear that the defendant has any standing, constitutional or otherwise, to object to a deviation from that policy. In order to maintain public respect for the tax laws and to deter others from similar violations, the Internal Revenue Service and the Department of Justice have adopted a policy whereby the imposition of criminal sanctions in the cases selected for prosecution should be considered paramount in relation to the civil aspects of the cases. The policy

is not predicated on an administrative determination that to do otherwise would be to compel the defendant to be a witness against himself in violation of the Fifth Amendment. Rather, it is predicated on an administrative determination that to do otherwise would not be in the best interests of the Internal Revenue Service, the Department of Justice and the public at large. In electing to deviate from a policy which the record indicates was self-serving, the Government has not thereby deprived the defendant of any rights.

Moreover, not only is the policy for the benefit of the Government, but it admits of exceptions. It does not clearly appear from the record in what circumstances exceptions to the policy were made by the Government. Apparently, the defendant's position is that in excepting to the policy in this instance the Government deviated from the normal circumstances wherein an exception would be made. However, the defendant's contentions are lacking in merit in that we are unable to ascertain from the record those circumstances wherein exceptions to the policy were normally made and in that the policy excepted to was for the benefit of the Government.

 Furthermore, even if we assume that the Government's failure to extend the administrative policy in question to the defendant was a denial of due process, it seems clear that the equal protection aspects of the due process clause of the Fifth Amendment may have been violated only insofar as the Government has been able to thereby obtain incriminating evidence. Proceeding on the assumption that the Government did acquire incriminating evidence in violation of the Fifth Amendment, the defendant would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. United States v. Blue, supra.

This is not a case where it affirmatively appears that there was no evidence of income tax evasion presented to the Grand Jury, or that all of the evidence which it heard on the inquiry was unlaw-

538

fully procured, in violation of some fundamental right of the defendant, and which would be barred on the trial as incompetent and inadmissible against him. The defendant cites no case, nor have we been able to find one, in which it has been held that the mere introduction before the Grand Jury of incompetent evidence, whether constitutional rights are invaded or not, has been held ground for abating an indictment which has been returned upon such evidence, together with other competent evidence against the accused.

Accordingly, the defendant's motion to dismiss the indictment on the ground that the Government's refusal to extend to the defendant the administrative policy of making no assessments in advance of criminal proceedings was a denial of due process is denied.